Good morning, your honors. I got the court's order about what to focus my remarks on. Of course, being an advocate, I'd love the opportunity if the court wants to give it to me at some point with a question or whatever to respond to the sort of gut substantive issue. But I will, of course, comply with the court's order. What the court has to decide in ruling on the appeal waiver question is how to construe a modification of a plea agreement. We are not arguing here that the government waived its appeal waiver. What we're talking about, the defense argument, is there was a modification of the plea agreement, which I think actually everyone agrees, and the question is how you're going to construe that and apply it. As memorialized in the defense sentencing memorandum, which everyone agrees is properly before the court, it was that the government, quote, will not object to the defense arguing for a lower base offense level than 20 based on Aguila Montes de Oca. Put similarly, but directly by the prosecutor in an e-mail that we're seeking to supplement the record with, and you have a motion before your honors about that. We agree that you should be allowed to argue that the base offense level should be changed in the defendant's favor because there is no new law on the topic since the plea agreement. There are at least three or four reasons, your honors, why that modification should be construed to allow us to make the argument we're making on this appeal. Do you agree that if that e-mail is not submitted that you have no evidence of modification? No, your honor, because we have the sentencing memorandum footnote, which memorialized it as well. Memorialized what? The modification of the plea agreement, noted that the government, that was the first quote I just read, and I think that also memorialized the modification. That's it. Well, we haven't granted the motion. That's why I wondered whether that was the sole basis for that. No, I don't think it is, your honor. And in fact, I think as I look back more at the e-mail and compare it to what's in the sentencing memorandum, it really just gives it a little more detail, I think. The language I was quoting that's in the record with certainty is GSER 213, government sealed excerpt of record, second volume, page 13. Reasons why that modification applies here. First of all, its plain language isn't limited. It doesn't say, will not object to the defense arguing for a lower base offense level, quote, in the district court, unquote. It says, will not object to the defense arguing for a lower base offense level, period. At best, I think the government has an ambiguity, but that leads to the second reason. The modification should be construed in the defense's favor here. That's the well-established principle that ambiguous plea agreements get construed in favor of the defendant. Now, the government at some point in the briefing in this case says, oh, well, that's only to keep defendants from being led by ambiguous promises to plead guilty. I don't think that's the main reason for that provision. The main reason is that defendants have lesser bargaining power in the system, and it's typical in contract construction to construe a contract in favor of the party with a lesser bargaining power. That leads to the third reason. The modification should be construed in the defense's favor here. There's the public policy considerations where defendants are giving up important rights and have constitutional rights at stake. That was recognized in the Barron case that I quote at page three of my reply brief. It points out that a, quote, plea bargain is not a commercial exchange, unquote, and that there's important liberty interest and interest in just punishment at stake. I think, remember, the government has an interest in seeing justices done. There's lots of cases that talk about that. And frankly, I think it's in the government's interest that the law be properly applied also. So there's that consideration. Finally, Your Honors, the last reason is that reading the modification as we argue here is consistent with the structure of the plea agreement. The government puts that fairly, very nicely in its original motion to dismiss. It talked about how we stipulated to an offense level here, and then we tied the appeal waiver to the offense level. Which makes a lot of sense if you think about it, because you stipulate to an offense level. You're saying you're not going to object to it. And if you're not going to object to it, you couldn't appeal anyway, so you tie an appeal waiver to it. Well, it follows from that that if the offense level stipulation is modified, that the appeal waiver provision that's tied to it should be modified. So for all of those reasons, Your Honor, the modification here really should be construed in favor of the defense to allow the appeal. And I'll keep the rest of my time for rebuttal and or anything the Court might let me say on the other issues, unless the Court has questions right now. Well, since you have left yourself a lot of time and maybe a minute to summarize anything on the merits that you think was not adequately addressed in the previous case, since obviously we've heard that one on the merits. Yes, Your Honor. But if you have anything new to add, that would be helpful. Maybe I could talk about the Terrell case a little bit and why I think that's not controlling. And maybe the James case as well. The Terrell case is, I think, both distinguishable and not controlling for two reasons. First of all, it's distinguishable, because at least if I read the briefs in that case correctly, the defense there never pointed to specific published cases with the sort of consensual entry burglaries that we have here that we're arguing don't create the significant risk that James requires. So I think it's distinguishable in that sense, because we point to at least three published examples. And I would submit there's lots of others out there in the 150,000 cases that Mr. Andre referenced, but not all cases where there's pleas or convictions of burglary cases get published in published opinions, of course. Second, Your Honor, it's not controlling, because it really doesn't address the question that we're pushing here. If you read the opinion in the briefs, really the main argument the defense is making there, and the court, the panel, is addressing, are two. One is this issue about whether a movable object or place can be a dwelling. And I don't think that changes the risk, because breaking into a trailer probably creates the same risk of a police officer or an occupant catching you and violence erupting. But they also talk about the criminal intent being formed after the entry. That's their second main point. And that really is not, I don't think, the real key here is that it can be a consensual entry where the person's invited in, and the person's committing a crime like stock fraud or writing a bad check, that there's almost a zero chance the person, the occupant that's the victim is going to discover at the time. And that was really not focused on at all by this opinion. There's no discussion in the Terrell opinion, and I think because it really wasn't argued, about how that somehow creates a significant risk of injury, or how that somehow is violent and aggressive conduct, which is what Begay requires. So I really don't think Terrell can or should be read as reaching that issue. With respect to James, Your Honor, Judge Wallace, you brought up the James case. James, I think also, and I just glanced at the opinion again real quickly to refresh my memory when you asked the question. But I don't think, James talked about this. It says, one could, of course, imagine a situation in which attempted burglary might not pose a realistic risk. And then went on to say, we're not going to consider hypothetical cases. But I don't think either in James, I don't think there was a specific example of a Florida case pointed to, that fit this hypothetical they were talking about. And Your Honor, Judge Graber, you asked about the sort of, you seem to be having your mind to test of the common, what's the common case, the ordinary case. But I think the real test under James is not what's most common in the sense of 60% versus 40%. It's whether the examples the defense suggests or finds in public cases can be characterized as almost hypothetical or almost inconceivable or extremely unusual. So I think, you know, it's not like you need anything close to a 50-50 split. Well, does the split go the other way? Roughly similar is a pretty wide language. Yeah, but I think what they're talking about, the roughly similar language, I think, is connected to the type of risk. They're talking about a risk that's roughly similar to the risk from a generic burglary, which is that someone will catch the person breaking in and say, wait a minute, and grab him, and violence will erupt. I think that's where the roughly similar comes in. And frankly, I would submit that someone knocking on the door saying, I saw your ad in the newspaper for a used car. I want to come in and write you a check for it. And they're thinking it's going to be a bad insufficient funds check. I just, that's labeled burglary in California. But I don't think that's roughly similar to generic burglary. Thank you, counsel. We still have a little bit of rebuttal time left. Thank you, Warren, for giving me that chance. Thank you. Thank you, Jean-Claude Andre, again, on behalf of the United States. Mr. Gunn opened up his argument by saying that he thinks the parties agree that there's a modification to the plea agreement here. And the government actually does not agree that there's a modification. I was careful in my language in briefing this, referring to the government's promise not to object. And I don't believe I ever let the word modification slip in because we do not believe it was a modification. There's not a lot of law on this point. But there is a decision from this court called Floyd. It goes back about 15 years. And Floyd talked about if you're going to modify a fully integrated plea agreement. And make no mistake, we have a fully integrated plea agreement here. Paragraph 24, which is page 14 of the government's first volume of sealed excerpts of record, has the full integration provision. Floyd says, and of course there are statements of contract say, that if you have a fully integrated contract, any modification of the terms in it needs to be expressed. And in particular, in the plea agreement context, Floyd added the additional gloss that if you're going to modify a plea agreement, the district court is required to go through an additional kind of mini rule, at least mini rule 11 colloquy, to ratify it. Even the plain language of our full integration provision in this plea agreement says that there must be an agreement in writing or put on the record in court. It doesn't provide for just memorialization in the footnote to a sentencing position. Now, that said, I'm not saying that we didn't agree to it. I'm saying it's important to figure out where we start. Mr. Gunt would prefer the court to start with all of the principles that apply to construing plea agreements. And we say, no, because we have a plea agreement. We have a rule 11 compliant colloquy in which the defendant ratified the appeal waiver. And now the question is, what do we do about this ambiguous memorialization of a side promise? And that side promise and the ambiguities in it need to be construed narrowly so as to preserve what is not expressly overruled or set aside in the original fully integrated agreement. So you think it only modifies by limiting the stipulation? Limiting the stipulation and recognizing that the government would not, basically what the defendant asked was, I want to be able to breach my plea agreement. And we said, we won't seek a breach. We'll let you do that. So it modifies both the stipulation and the breach provision. But it doesn't follow, particularly given that it's ambiguous, that the appeal waiver goes out with it. And to address Mr. Gunt's point that the appeal waiver, because it was originally tethered to the stipulation, it must continue to be, as a matter of practice, and we noted this in a footnote in our brief, I'm happy to submit to the court dozens of judicially noticeable examples of plea agreements where that link is not preserved. Because our practice in our office is if the defendant makes a request or a compelling case as to why he should be able to argue for a lower base offense level, but we, the government, think we're going to get it, we're going to get the higher offense level, there will be a disconnect in those plea agreements where the appeal waiver trigger is where the government expects the court to calculate the offense level. So it doesn't follow that in all cases the link is preserved. And that's the way we would read it here, where if the defendant came in and said, I have a new case I want to argue, you said, okay, you can argue that. But that doesn't mean that we were contemplating that the appeal waiver would go with it. On the point that, you know, justice be done, I'm perfectly comfortable standing here and asking this Court to dismiss the appeal. Plea agreements and appeal waivers are important to the government. When the government makes certain concessions for the defense and the defense agrees and the court goes, the sentencing court goes along with it, we expect to be done. We don't expect to have to litigate for, you know, a year, year and a half later, a year, year and a half more over, you know, dozens of docket entries whether the appeal should go forward. And I think what's particularly telling as far as how the government is being fair is even if we assume that the ambiguity with respect to at what levels the defendant can make his arguments, even if we assume that that goes to his benefit, here his claim on appeal has stretched what he asked for beyond recognition. He didn't ask to be able to argue residual clause. He didn't ask to be able to argue the entire guideline, 4B1.2. He didn't ask to argue crime of violence. He asked for something very narrow, Aguila Montes de Oca, which is just a modified categorical issue asking whether you can narrow California first degree burglary to generic burglary. And because he memorialized it in the sentencing position, he's the drafter, so if it should be construed against anybody, it should be construed against him. But again, it's key that he didn't ask to go as broad as he is now going here. So even if we just assume that he can make his, the argument he requested before this court, he hasn't made that argument. So he's really asking for this, again, admittedly ambiguous memorialization of promise to be stretched in two regards, and we think it just goes too far. We didn't agree to allow the defense to argue the entire guideline, or to argue the entire crime of violence issue, or to argue residual clause on appeal. And that's plain from the text of the footnote of the sentencing position, and it's reinforced by the declaration, by the proffered declaration of trial counsel. So even in that declaration, K. Otani says, I felt I needed to argue a gila montes de oca. He didn't say, I felt I needed to argue this wasn't a crime of violence. He didn't say, I felt I needed to argue that this wasn't a 4B1.2 offense. He said, a gila montes de oca. On Mr. Gunn's arguments relating to Terrell and James and why they're distinguishable or not controlling, I think Mr. Gunn might be confusing the difference between what, between holding and arguments. I mean, basically, he's correct that the defendant in Terrell didn't make all the arguments that he's made today. But despite that, this Court held in Terrell, and what's particularly relevant is Arizona Second Degree Burglary, that Arizona Second Degree Burglary, even though it doesn't require an unlawful entry, even though it can apply to a whole bunch of conveyances, and in that respect is actually broader than California First Degree Burglary, this Court held that it's a residual clause offense. And so I don't think that, as a matter of stare decisis, that the Court should be deciding, oh, Terrell doesn't apply because the defendant in that case didn't make precise arguments here. I mean, if that's the way that appeals courts work, the Court would essentially have to rewrite its precedent every day because someone can always come up with a clever new distinction, not from the holding of the court, but from the arguments made in the briefs underlying that decision. Additionally, I think that Mr. Gunn's explanation of the consented entry burglary suffers from the same flaw as the counsel in the prior argument. Both counsel are essentially elevating their examples, their three examples, to the ordinary case, or presuming they are, and then saying they're insufficiently risky. We have to kind of come back down to ground level and say, are those the ordinary case? I don't have stats, admittedly, but they're not. Putting aside my juxtaposition of the three examples vis-a-vis two and a half million convictions under the statute, if you go into Westlaw and you type in First Degree California 439 Burglary, you'll see that the overwhelming majority of the reported decisions and even the depublished California decisions are breaking and entering burglaries. I mean, so, you know, someone could prepare an imperfect but nonetheless informative statistical analysis just by going on Westlaw. And finally, you know, even if that was too imperfect, I think one thing that the dissenters in, or the dissenters from denial over here in Mayer and Terrell were right about, is that some of this is driven kind of by intuition and experience and gut instinct. I mean, if you don't have stats, judges need to decide whether a certain crime, you know, presents a serious, categorically presents a serious potential risk of injury. And, I mean, you know, Congress decided to task judges with that obligation when it created this probabilistic inquiry. And I think Congress trusted, Congress through ACCA and then the Sentencing Commission by adopting the ACCA definition, I think Congress trusted that courts would use their best judgment and their experience to make that determination. And frankly, I don't see anything wrong with that being the case. If the Court has no further questions, I will. I don't believe we do. Thank you.  Mr. Gunn, you have some time remaining. Thank you. I'm going to try to make three quick points, if I can. First of all, I've practiced in our district since 1983. I've looked at hundreds of plea agreements, if not thousands, and in the vast majority of those plea agreements, and I could also submit judicially noticeable documents. In the vast majority, though conceivably not every one, the appeal ---- I'm afraid we can't use your statement as record, can we? I'm sorry. But on the other hand, I think I'm responding to what counsel for the government said. Usually, they are tight. Second, Your Honor, I guess I have to object to counsel's argument about Floyd and fully integrated plea agreements. That wasn't made at any point in any debriefing in this case, and so I don't think the Court should consider it. But I'll leave that for the Court to decide. I did want to address, it is in the briefing, this suggestion that we were only allowed to argue Aguila Montes de Oca in the very narrow sense of we could argue it wasn't generic burglary now, but we somehow couldn't argue against them arguing the residual clause applied. Well, first of all, that would make no sense. There's no reason to argue it doesn't come under Clause 2 if we then can't argue against their argument that it comes under Clause 3. Second, I think if you read the way it was phrased in the sentencing memorandum carefully, and it's even more clear, I think, if you read the email, if you decide to supplement the record with that, you have two clauses. The first clause is we'll not object to the defense arguing for a lower base offense level. The second clause is based on Aguila. The based on Aguila is what the government's agreement not to object is based on. It's not saying that the only argument that can be made is the Aguila argument, and then we have to totally give in on the residual clause. So I think that's consistent with the wording of the way it was phrased in the sentencing memorandum in addition to being the only thing that makes any sense. Third, if the government's right that that's the way we were limited, then how come they didn't say that in the district court when we made exactly the same argument against the residual clause that we're arguing now? Obviously, no one in the district court was understanding it to mean that. Thank you, counsel. The case just argued is submitted, and we appreciate very interesting arguments. We'll take our mid-morning break, and we'll be back in about ten minutes.
judges: Mills, Wallace, Graber